IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION


| | |
|---|---|
| STEPHEN RUDMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19 C 4167 |
| | ) |
| BOARD OF EDUCATION FOR TOWNSHIP | ) |
| HIGH SCHOOL DISTRICT #113, THOMAS | ) |
| KRIEGER, LINDA YONKE, BEN | ) |
| MARTINDALE, T.J., individually and as a | ) |
| parent of M.J., D.M., individually and as a | ) |
| parent of E.M., J.B., individually and as a | ) |
| parent of M.B., S.G., individually and as a | ) |
| parent of E.G., B.S., individually and as a | ) |
| parent of M.S., and other unknown John | ) |
| Does, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

   The Board of Education for Township High School District #113 terminated Stephen Rudman from his position as a high school tennis coach following an investigation into allegations that he physically, verbally, and emotionally abused and bullied students. Rudman has sued the Board, the District's head of human resources, the District's interim co-superintendents, and parents of students who played on the tennis team under 42 U.S.C. § 1983 and Illinois law for claims relating to the Board's investigation into his conduct. The defendants have moved to dismiss the complaint for failure to state a claim.

**Background**

In considering the motions to dismiss, the Court accepts the facts in the complaint as true, see O'Boyle v. Real Time Resolutions, Inc., 910 F.3d 338, 342 (7th Cir. 2018), and takes judicial notice of facts and rulings in public state court documents from a case brought by Rudman in the Circuit Court of Lake County, Illinois, see Ennenga v. Starns, 677 F.3d 766, 774 (7th Cir. 2012).

Rudman coached tennis for twenty years at Highland Park High School in Highland Park, Illinois. The Board employed him and had the power to terminate him.

On June 22, 2018, an attorney sent a letter on behalf of an unnamed client to Christopher Dignam, the District's superintendent. In the letter, the attorney alleged that Rudman repeatedly bullied, intimidated, and harassed students. The attorney formally requested that Dignam or his designee investigate the allegations.

The Board's Uniform Grievance Policy (the Policy) sets out a process by which a complaint manager, who is appointed by the superintendent, investigates allegations of bullying and other conduct by the District's employees. See Ex. 2 to School Defs.' Mot. to Dismiss, dkt. no. 31-3, at 2–3; Am. Compl. ¶¶ 37–44.[1] Under the Policy, when a formal complaint is filed by a student or parent, the complaint manager is expected to address the complaint "promptly and equitably," and the superintendent must inform the Board of the complaint. Ex. 2 to School Defs.' Mot. to Dismiss, dkt. no. 31-3, at 2. The

---

[1] The Court considers the Policy submitted by the Board in resolving the motion to dismiss, even though it is a defense exhibit not attached to Rudman's complaint, because Rudman cites to and quotes from the Policy in his complaint but appears to have inadvertently forgotten to attach it to his complaint. See Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (in resolving a motion to dismiss, a court may consider documents referred to in the complaint, even if they are not attached to it).

complaint manager or a qualified person she appoints must investigate the complaint, "ensure both parties have an equal opportunity to present evidence," and file a written report sharing her findings with the superintendent within thirty days unless given an extension of time. *Id.* at 3. The complaint manager may not require a student or parent who complains of "any form of harassment to attempt to resolve allegations directly with the accused." *Id.* at 2.

The Policy also provides for decisions and an appeal process. Within five school days after receiving the complaint manager's report, the superintendent must issue a written decision based on a standard of preponderance of the evidence and send it to the complainant, the accused, and the complaint manager. The complainant or the accused may appeal the decision to the Board by making a written request within ten school days of receiving the report. The Board then has thirty school days to "affirm, reverse, or amend the Superintendent's decision or direct the Superintendent to gather additional information." *Id.* at 4.

Between June 22 and July 24, 2018, Thomas Krieger, the District's head of human resources and one of its complaint managers, investigated the allegations against Rudman. As part of that investigation, he interviewed students and parents. The interviewees included parents T.J., D.M., J.B., S.G., and B.S. (collectively, the Parent Defendants) and their respective children, M.J., E.M., M.B., E.G., and M.S. The Parent Defendants and/or their children told Krieger or other school officials that Rudman hit students with tennis balls, "threw chairs in anger at one or more tennis matches," "used profane language toward players," told students to leave the team's bus, interfered with students' educational performances, and emotionally abused and

3

bullied students. Am. Compl., dkt. no. 17, ¶ 8.

Dignam apparently left his position as superintendent; by late July 2014, Dr. Ben Martindale and Dr. Linda Yonke were interim co-superintendents of the District. On July 24, 2018, Krieger and Dr. Martindale met with Rudman regarding the allegations against him. Rudman denied the allegations. He asked for the names of his accusers and the people interviewed during the investigation, but Krieger and Dr. Martindale refused to provide him with that information. Rudman gave them a list of witnesses who he believed could testify on his behalf.

On August 1, 2018, Krieger called Rudman, said that he had not interviewed all the witnesses Rudman had named, and informed Rudman that the District had completed its investigation into the complaint. On that phone call, Krieger told Rudman that he was being terminated from his coaching position. The complaint does not make clear who authorized Rudman's termination.

On October 11, 2018, Rudman sued the Board, Krieger, Dr. Martindale, and Dr. Yonke in the Circuit Court of Lake County, asserting two state-law claims related to the investigation into the allegations against him. On March 14, 2019, the court dismissed that complaint. Rudman filed an amended complaint on April 1, 2019, which the state court dismissed on June 6, 2019.

Rudman's second amended complaint before the state court, which he filed on June 18, 2019, is the most relevant to this case. In his second amended complaint, Rudman named as defendants the Board, Krieger, Dr. Martindale, and Dr. Yonke. The facts Rudman alleged in that complaint are substantively identical to the facts he alleged in his complaint in the present case. He asserted two claims. First, he

4

requested a writ of mandamus directing the defendants to disclose all accusations against him and to comply with certain requirements in the Board's Policy, including the requirements that the complaint manager issue a written report to the superintendent, the Board consider all materials relevant to the complaints, and the superintendent mail a written decision to the accused. Second, he sought, under Illinois Supreme Court Rule 224, a bill of discovery ordering the defendants to produce the names and contact information of the people who made allegations against him and whom the defendants interviewed during their investigation.

Two days later, on June 20, 2019, Rudman filed the present case in federal court. As in his state court lawsuit, he sued the Board, Krieger, Dr. Martindale, and Dr. Yonke (the School Defendants). He also sued six named parents, in their individual capacities and as parents of minor children, and other unknown John Does.[2] Rudman asserted a claim against the School Defendants for violation of due process and a claim against the Parent Defendants for defamation.

On September 12, 2019, the Circuit Court of Lake County dismissed both counts of the second amended complaint. The handwritten order, which Rudman's attorney wrote (to memorialize the judge's oral ruling) and which the judge signed, states that the mandamus claim was dismissed with prejudice and that the claim for a bill of discovery was dismissed with prejudice "based on the fact that there is a pending federal lawsuit." 2d Am. Compl. Hr'g Order, Ex. 8 to School Defs.' Mot. to Dismiss, dkt. no. 31-5, at 2. In

---

[2] In the initial complaint in the present case, Rudman did not sue all of the Parent Defendants; he did not sue S.G., and he sued two parents who later he dropped from the amended complaint.

5

its oral ruling, the court stated that a party in Illinois may use a bill of discovery to find the identity of unknown parties so that the party has the necessary information to file a lawsuit. The court stated that it dismissed this claim because Rudman had named defendants in this federal lawsuit and could use procedures in federal court to obtain the information he sought; thus, the court reasoned, the bill of discovery was not "necessary" to enable him to bring a lawsuit. 2d Am. Compl. Hr'g Tr., Ex. 8A to School Defs.' Mot. to Dismiss, dkt. no. 31-12, at 40. The court also stated:

> [Y]ou've already sued these individuals in federal court. And if there were other individuals that you discovered during the course of discovery in federal court, then you can add them as defendants and you can do so. So I'm dismissing Count 2 for that reason based on the pendency of the federal suit where there's already named defendants.

*Id.* at 41.

Back to the present lawsuit. Rudman filed the present complaint against the School Defendants and the Parent Defendants. In count 1, Rudman alleges, under 42 U.S.C. § 1983, that the School Defendants violated Rudman's due process rights under the Constitution in connection with their conduct of the investigation into the parents' complaints against him. In count 2, Rudman seeks damages against the Parent Defendants for defamation under Illinois law based on statements they allegedly made to school officials accusing him of abuse or bullying. Additionally, in count 2, Rudman seeks an order directing the school defendants to produce the names and contact information of each person who made allegations to the District's employees against Rudman or whom the School Defendants interviewed in the course of their investigation. As indicated, the defendants have moved to dismiss the complaint for failure to state a claim.

6

**Discussion**

To survive the motions to dismiss, Rudman must allege "enough facts to state a claim to relief that is plausible on its face." *O'Boyle*, 910 F.3d at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court addresses first the doctrine of claim preclusion (res judicata) as it relates to the claims against the School Defendants and then the question of supplemental jurisdiction over the state-law defamation claim.

**A.     Claim preclusion**

The School Defendants argue that Rudman's claims against them are barred by the doctrine of claim preclusion based on the Circuit Court of Lake County's decision. Claim preclusion is an affirmative defense. *See Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). A plaintiff is not required to anticipate or plead around affirmative defenses in his complaint. *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). But "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (affirming the dismissal of a complaint based on claim preclusion).

Because the "prior judgment is from an Illinois state court, Illinois preclusion principles apply." *Rose v. Bd. of Election Comm'rs for City of Chicago*, 815 F.3d 372, 374 (7th Cir. 2016). In Illinois, "[t]he doctrine of res judicata provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *A & R Janitorial v. Pepper Constr. Co.*, 2018 IL 123220, ¶ 16, 124 N.E.3d 962, 966. Claim preclusion "bars not only what was actually decided in the first action but

also those matters that could have been decided." *Id.*

Under Illinois law, claim preclusion has three requirements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies."[3] *Id.* All three requirements are satisfied in this case with respect to the claims against the School Defendants. Because it is undisputed that Rudman brought the state-law case against the same defendants he has named here, the Court addresses only the first two requirements.

First, the Circuit Court of Lake County is a court of competent jurisdiction, and it rendered a final judgment on the merits on the claim Rudman asserted there against the School Defendants. It is undisputed that the circuit court is a court of competent jurisdiction. Further, "an order dismissing a complaint with prejudice is a final, appealable order." *Id.*, 2018 IL 123220, ¶ 17, 124 N.E.3d at 967; *see also* Ill. S. Ct. R. 273. Rudman argues that the circuit court's September 12, 2019 order was not final because the court dismissed his claim against the School Defendants without prejudice. But the order, which Rudman's attorney wrote by hand and the judge signed, undercuts that argument: it states that the court dismissed that claim with prejudice. Ex. 8 to School Defs.' Mot. to Dismiss, dkt. no. 31-5, at 2.

Next, Rudman's state and federal actions involve the same cause of action for claim preclusion purposes because, although the actions "assert different theories of relief," they "arise from a single group of operative facts." *A & R Janitorial*, 2018 IL

---

[3] Rudman contends that, for claim preclusion to bar a claim, the issues decided in the prior proceeding must be identical to those presented in the subsequent proceeding. Under Illinois law, that is true for issue preclusion (collateral estoppel) but not for claim preclusion (res judicata). *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 20, 605 N.E.2d 544, 552 (1992).

123220, ¶ 18, 124 N.E.3d at 967.  As indicated, Rudman's state and federal actions arise from substantively identical facts involving the investigation into the complaints against him as a high school tennis coach.  *See, e.g.*, *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 314, 703 N.E.2d 883, 894 (1998) (a "telling indication of identity of cause of action" is "parallels between the factual allegations of [a plaintiff's] state complaint and [his] federal complaint").

"[A]n aspect of the law of preclusion" is the "rule against claim-splitting," which generally "prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action."  *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1206 (1996).  "This rule is founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits."  *Id.* at 340, 665 N.E.2d at 1207.  Accordingly, Rudman's claims against the School Defendants regarding their investigation into his conduct "could not be divided" between separate lawsuits in state and federal courts, *see id.*, unless the state court judge expressly reserved Rudman's right to bring his federal claim in a separate proceeding, a point the Court will discuss momentarily.

If Rudman is arguing that he needed to split his state and federal claims against the School Defendants because he could not have brought his federal civil rights claim in state court, that would be incorrect.  There is no question that Rudman could have filed his section 1983 claim in state court.  *See, e.g.*, *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014) (Illinois courts have jurisdiction over federal civil rights claims).  It does not matter that Rudman "never litigated his § 1983 claim in state court"; the rule against claim-splitting applies to this claim because the state court could

9

have decided it. *See Rose*, 815 F.3d at 375. Nor did Rudman need to "complete[] the state court process" for his civil rights claims to be ripe, as he contends. Pl.'s Resp., dkt. no. 36, at 4. Section 1983 does not require a litigant to exhaust state remedies before filing suit. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982).

Rudman argues, however, that his federal claims against the School Defendants are not barred by the rule against claim-splitting because the state court dismissed his case "in deference to the federal case." Pl.'s Resp., dkt. no. 36, at 3. Illinois courts recognize exceptions to the rule against claim-splitting, including where "the court in the first action expressly reserved the plaintiff's right to maintain the second action." *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207. According to the Seventh Circuit, "[t]he Supreme Court of Illinois has held . . . that to be deemed 'express' the reservation must identify what exactly is being reserved." *Brown v. City of Chicago*, 771 F.3d 413, 415 (7th Cir. 2014). The Seventh Circuit has stated that the Illinois Supreme Court insists "on strict compliance" with this requirement "to prevent, or at least to minimize the likelihood of, judge shopping and forum shopping." *Id.* at 416.

In this case, the state court did not expressly reserve Rudman's right to maintain claims against the School Defendants. The court dismissed Rudman's claim against the School Defendants with prejudice and made no statement reserving or even suggesting his right to bring a future claim against them. In dismissing Rudman's claim seeking a bill of discovery under Illinois Supreme Court Rule 224, the state court judge specifically referred to Rudman's filing of a claim in this case against the Parent Defendants and indicated that because Rudman was pursuing that suit, he would be able to get the relief he needed there and thus was not entitled to relief under Rule 224 .

2d Am. Compl. Hr'g Tr., Ex. 8A to School Defs.' Mot. to Dismiss, dkt. no. 31-12, at 41. But the state court's discussion of this point concerned only the claims on which Rudman was trying to identify proper defendants via Rule 224—specifically, his defamation claim. Neither this discussion nor anything else in the state court proceedings suggests that the court was reserving Rudman's ability to maintain further claims against the School Defendants.

None of the other recognized exceptions to the rule against claim-splitting apply either. Illinois courts recognize exceptions where a plaintiff omitted a claim "due to ignorance, mistake or fraud," but that is not the case here. *See Rein*, 172 Ill. 2d at 341, 665 N.E.2d at 1207. Illinois courts have also found that "it would be inequitable to apply" the rule against claim-splitting where (1) there is an agreement between the parties or acquiescence by the defendant to claim-splitting, (2) the court in the first case lacked subject-matter jurisdiction over the plaintiff's claim, (3) "the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme," (4) "the case involves a continuing or recurrent wrong," or (5) the plaintiff "clearly and convincingly" has shown "that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Id.* (citing Restatement (2nd) of Judgments § 26(1) (1980)). But the School Defendants have not agreed or acquiesced to Rudman's claim-splitting; they have objected to it. *See id.* at 342, 665 N.E.2d at 1207. And the state court did not dismiss Rudman's federal claim against the School Defendants for lack of jurisdiction, *cf. Nowak v. St. Rita High Sch.,* 197 Ill. 2d 381, 392–93 , 757 N.E.2d 471, 479 (2001), or issue a judgment that was "plainly inconsistent with the fair and equitable implementation of" section 1983 or another statutory or constitutional scheme,

see *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (describing the application of this exception); *Rose*, 815 F.3d 372, 374 (7th Cir. 2016) (it is not unfair or unequitable for courts to apply claim preclusion to section 1983 claims). Nor does Rudman's case involve a "continuing or recurrent wrong"; the School Defendants terminated him before he filed his first action, and he does not allege that they continued to wrong him after he filed suit. Finally, because Rudman has not shown that this case implicates a continuing restraint on his personal liberty or some other extraordinary unfairness, he has not "clearly and convincingly" identified an "extraordinary reason" why claim preclusion should not apply. *See id.*; Restatement (2d) of Judgments § 26 (1982) (exception applies in matters including, for example, the "civil commitment of the mentally ill," "the custody of a child," or a divorce); *cf. Watson v. Raoul*, 2019 IL App (1st) 180477-U, ¶ 27 (extraordinary-reason exception applied where an otherwise-precluded lawsuit was the plaintiff's only means for establishing whether the state required him to register as a violent offender against youth and could prosecute him for his failure to do so).

Finally, any contention by Rudman that it is unfair to bar his section 1983 claim is negated by the principles behind claim preclusion. "The underlying policies of the doctrine are to promote judicial economy and to protect defendants from the burden of having to relitigate essentially the same claim." *A & R*, 2018 IL 123220, ¶ 16, 124 N.E.3d at 966. Allowing Rudman to pursue his federal action after bringing an identical cause of action against the School Defendants in state court would undermine that purpose. *See, e.g.*, *River Park*, 184 Ill. 2d at 319, 703 N.E.2d at 897. Rudman may be without a remedy against the School Defendants at this point, but if so it is a problem of

his own making given his election not to assert his federal claim as part of his existing state court lawsuit. See id. at 896–97.

The Parent Defendants do not argue that Rudman's claim against them is barred by claim preclusion. Regardless, that argument would lack merit because they were not parties in the state court action and the state court's dismissal of Rudman's Rule 224 claim was not a final judgment on the merits of whatever claims Rudman was seeking to assert following the Rule 224 proceeding. See Angelo v. Moriarty, No. 15 C 8065, 2016 WL 640525, at *3 (N.D. Ill. Feb. 18, 2016) (an Illinois state court's decision under Rule 224 is not final because Rule 224 provides "a procedural mechanism used by litigants in the Illinois courts for the sole purpose of identifying a responsible party for a future lawsuit"). In addition, the state court's comments in dismissing the Rule 224 claim make it clear that the court did so because Rudman would be able to proceed against the Parent Defendants in another forum. Thus the state court expressly reserved Rudman's ability to proceed on his current claims against the Parent Defendants. See supra at 10–11.

For these reasons, the Court dismisses Rudman's claims against the School Defendants.

**B.   State-law claim**

Rudman's remaining claim is a state-law defamation claim against the Parent Defendants over which the Court may exercise only supplemental jurisdiction. 28 U.S.C. § 1367(a). In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." Fields v. Wharrie, 672 F.3d 505, 518–19 (7th Cir. 2012). Accordingly, the

Court dismisses Rudman's remaining claim for lack of supplemental jurisdiction.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motions to dismiss [dkt. nos. 28 & 31] and directs the Clerk to enter judgment dismissing with prejudice plaintiff's claims against defendants Board of Education for Township High School District #113, Thomas Krieger, Linda Yonke, and Ben Martindale, and dismissing for lack of jurisdiction plaintiff's claims against defendants T.J., D.M., J.B., S.G., and B.S.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 30, 2020